1  **LAW OFFICES OF DALE K. GALIPO**
2  Dale K. Galipo (SBN 144074)
   *dalekgalipo@yahoo.com*
3  (818)347-3333
   21800 Burbank Blvd., Suite 310
4  Woodland Hills, CA 91367

5
6  *Attorney for Plaintiffs*

7
8  **UNITED STATES DISTRICT COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

10 | DENISE MITCHELL; and K.M., a | CASE No.:    5:22-cv-01014
11 minor by and through her Guardian |
   ad Litem DENISE MITCHELL, both | **PLAINTIFFS' COMPLAINT FOR**
12 individually and as successors in | **DAMAGES**
   interest to Decedent KENNETH |    1.  42 U.S.C. § 1983 (Fourth
13 EARL MACKEY, |        Amendment – Detention and Arrest)
14 |    2.  42 U.S.C. § 1983 (Fourth
        Plaintiffs, |        Amendment – Excessive Force)
15 |    3.  42 U.S.C. § 1983 (Fourth
   v. |        Amendment – Denial of Medical
16 |        Care)
17 |    4.  42 U.S.C. § 1983 (Fourteenth
   CITY OF BARSTOW; and DOES 1- |        Amendment – Denial of Familial
18 10, inclusive, |        Relationship)
   |    5.  42 U.S.C. § 1983 (Municipal
19 |        Liability – Unconstitutional Custom,
        Defendants. |        Practice, or Policy)
20 |    6.  42 U.S.C. § 1983 (Municipal
   |        Liability – Failure to Train)
21 |    7.  42 U.S.C. § 1983 (Municipal
   |        Liability – Ratification)
22 |    8.  False Arrest/False Imprisonment
   |    9.  Battery (Survival/Wrongful Death)
23 |    10. Negligence (Wrongful
   |        Death/Negligent Infliction of
24 |        Emotional Distress)
   |    11. Violation of Cal. Civil Code § 52.1
25
   | **DEMAND FOR JURY TRIAL**
26

27

28

1

## COMPLAINT FOR DAMAGES

COME NOW, Plaintiffs DENISE MITCHELL and K.M., by and through her Guardian ad Litem DENISE MITCHELL for their Complaint against CITY OF BARSTOW; and DOES 1-10, inclusive and hereby allege as follows:

### INTRODUCTION

1.     This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the shooting of Decedent, KENNETH EARL MACKEY, on June 21, 2021.  The Defendants are liable under state law pursuant to Gov't Code §§ 815.2(a) and 820(a), and Cal. Civil Code § 52.1. The Defendants are liable under the Constitution of the United States pursuant to the Fourth and Fourteenth Amendments brought under 42 U.S.C. § 1983.

2.     Defendant Does 1-6, inclusive ("DOE OFFICERS") caused Plaintiffs' and KENNETH EARL MACKEY'S various injuries herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/ or omissions around the time of the incident.

3.     Defendants CITY OF BARSTOW and DOES 7-10, inclusive, also caused various injuries and are liable under state and federal law and under the principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

4.     This action is in the public interest as PLAINTIFFS seek by means of this civil rights action to hold accountable those responsible for the shooting, and CITY OF BARSTOW'S ratification, failure to train, and policy of inaction in the face of serious constitutional violations.

### THE PARTIES

1

5.     At all relevant times, Decedent, KENNETH EARL MACKEY ("DECEDENT"), was an individual residing in the City of Barstow, California.

6.     At all relevant times, Plaintiff DENISE MITCHELL ("MITCHELL") was and is an individual residing in San Bernardino County, California. DENISE MITCHELL is the wife of DECEDENT and brings this action both in her individual capacity for wrongful death damages as the wife of DECEDENT and in a representative capacity as DECEDENT'S successor in interest pursuant to California Code of Civil Procedure § 377.60.  MITCHELL seeks both survival and wrongful death damages under federal and state law.

7.     At all relevant times, Plaintiff K.M. ("K.M.") is an individual residing in the City of Barstow, California. K.M. is the daughter of DECEDENT. K.M. brings this action both in her individual capacity for wrongful death damages as the daughter of DECEDENT and in a representative capacity as DECEDENT'S successor-in-interest pursuant to California Code of Civil Procedure § 377.60.  K.M. seeks both survival and wrongful death damages under federal and state law.

8.     At all relevant times, Defendant CITY OF BARSTOW ("CITY") is and was a municipal corporation existing under the laws of the State of California.  CITY is a chartered political subdivision of the State of California with the capacity to be sued.  At all relevant times, Defendant CITY was responsible for assuring that actions, omissions, policies, procedures, practices, and customs of the Barstow Police Department ("BPD") and its employees and agents complied with the laws of the United States and the State of California.  At all relevant times, CITY was the employer of DOES 1-10, inclusive.

9.     At all relevant times, Defendant Officers DOES 1-6 ("DOE

1   OFFICERS"), inclusive, were officers working for the BPD.  DOE

2   OFFICERS were acting under color of law and within the course and scope

3   of their duties as officers for the BPD. DOE OFFICERS were acting with the

4   complete authority and ratification of their principal, Defendant CITY.

5        10.   Defendants DOES 7-8, inclusive, are supervisory officers for the

6   BPD who were acting under color of law within the course and scope of their

7   duties as officers for the BPD.  DOES 7-8 were acting with the complete

8   authority and ratification of their principal, Defendant CITY.

9        11.   Defendant DOES 9-10 are managerial, supervisorial, or

10  policymaking employees of the CITY of Barstow Police Department who

11  were acting under color of law within the course and scope of their duties as

12  supervisorial officers for the City of Barstow Police Department.  DOES 9-

13  10, inclusive, were acting with the complete authority of their principal,

14  CITY.

15       12.   On information and belief, DOES 1-10 were residents of the City

16  of Barstow.

17       13.   In doing the acts and failing and omitting to act as hereinafter

18  described, Defendants DOE OFFICERS were acting on the implied and

19  actual permission and consent of Defendants BPD and DOES 7-10.

20       14.   In doing the acts and failing and omitting to act as hereinafter

21  described, Defendants DOES 1-10 were acting on the implied and actual

22  permission and consent of the CITY.

23       15.   The true names and capacities, whether individual, corporate,

24  association or otherwise of Defendants DOES 1-10, inclusive, are unknown

25  to Plaintiff, who otherwise sues these Defendants by such fictitious names.

26  Plaintiff will seek leave to amend this complaint to show the true names and

27  capacity of these Defendants when they have been ascertained.  Each of the

28  fictitiously-named Defendants is responsible in some manner for the conduct

3

COMPLAINT FOR DAMAGES

or liabilities alleged herein.

16.   At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

17.   All of the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

18.   All DEFENDANTS who are natural persons, including DOES 1-10, inclusive, are sued individually and/or in his/her capacity as officers, deputies, investigators, sergeants, captains, commanders, supervisors, and/ or civilian employees, agents, policy makers, and representatives of the CITY and the BPD.

19.   DECEDENT suffered serious bodily injury and death as a direct and proximate result of the actions and inactions of Defendants DOES 1-10, inclusive.  Defendant Officers are directly liable for DECEDENT'S injuries under federal law pursuant to 42 U.S.C. § 1983 and state law.

20.   Plaintiff MITCHELL suffered the loss of her husband as a direct and proximate result of the actions and inactions of Defendant Officers. Defendant Officers are directly liable for MITCHELL'S injuries under federal and state law.

21.   Plaintiff K.M. suffered the loss of her father as a direct and proximate result of the actions and inactions of Defendant Officers. Defendant Officers are directly liable for K.M.'S injuries under federal and state law.

22.    On November 24, 2021, PLAINTIFFS timely served their claims for damages with the CITY pursuant to applicable sections of the California Government Code.

23.    On January 8, 2022, PLAINTIFFS' claims were denied by CITY by operation of law.

## JURISDICTION AND VENUE

24.    The Court has jurisdiction over PLAINTIFFS' federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because PLAINTIFFS assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution.  This Court has supplemental jurisdiction over PLAINTIFFS' state law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

25.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), because all incidents, events, and occurrences giving rise to this action occurred within this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

26.    PLAINTIFFS repeat and re-allege each and every allegation of paragraphs 1 through 25, inclusive, as if fully set forth herein.

27.    On June 12, 2021, at approximately 1:00 a.m., DOE OFFICERS encountered DECEDENT at or around the 2300 block of East Main Street in Barstow, California. DOE OFFICERS did not have reasonable suspicion to detain, or probable cause to arrest, DECEDENT. Nevertheless, DOE OFFICERS fatally shot DECEDENT.

28.    At the time of the shooting and other undiscovered uses of force,

DECEDENT did not pose an immediate risk of death or serious bodily injury to any person and DOE OFFICERS had other reasonable options available to them.

29. After being shot, DECEDENT was immobile, bleeding, and in obvious and critical need of emergency medical care and treatment. DOE OFFICERS failed to timely summon medical attention for DECEDENT and failed to provide medical aid to DECEDENT, thereby further contributing to DECEDENT'S injuries and death.

30. Prior to shooting, DOE OFFICERS failed to give adequate commands to DECEDENT, and failed to give DECEDENT an opportunity to comply with commands prior to their use of excessive and unreasonable force.

31. Moreover, DOE OFFICERS failed to give DECEDENT a verbal warning that deadly force would be used prior to the use of deadly force, and failed to give DECEDENT an opportunity to heed any warning prior to their use of excessive and unreasonable force.

32. DECEDENT did not pose an immediate threat of death or serious bodily injury to anyone at any time immediately prior to or during the use of force and DOE OFFICERS had other reasonable options available to them.

33. As a result of the shooting and other undiscovered uses of force, DECEDENT endured severe pain and suffering and later lost his life and earning capacity.

34. Plaintiff MITCHELL is DECEDENT'S successor-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to DECEDENT'S interest in this action as the wife of DECEDENT.

35. Plaintiff K.M. is DECEDENT'S successor-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to DECEDENT'S interest in this action as the natural daughter of DECEDENT.

# FIRST CLAIM FOR RELIEF

### Fourth Amendment – Detention and Arrest (42 U.S.C. § 1983)
(By All Plaintiffs against Defendants DOE OFFICERS)

36.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 35 of this Complaint with the same force and effect as if fully set forth herein.

37.     The Fourth Amendment of the United States Constitution guarantees all persons the right to be free from unreasonable detention in violation of their right to privacy.  42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.  DOE BPD OFFICERS violated DECEDENT's right to be free from unreasonable search and seizures, which is guaranteed to him by the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

38.     At all relevant times, the DOE BPD OFFICERS acted under color of state law.  DOE BPD OFFICERS had no reasonable suspicion to approach DECEDENT and detain him.  In addition to the detention itself being unreasonable, the scope and manner of the detention was unreasonable.  It was not necessary to use force against DECEDENT in order to take him into custody.

39.     The conduct of the DOE BPD OFFICERS was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to the DOE BPD OFFICERS.  As a direct result of the unreasonable detention, DECEDENT experienced severe pain, suffering and the loss of life and enjoyment of life, for which he, through his successor in interest, is entitled to recover damages.

40.     PLAINTIFFS bring this claim as a successors-in-interest to DECEDENT.  PLAINTIFFS seek survival damages on this claim, including for

DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.  PLAINTIFFS also seek attorney's fees under this claim.

### SECOND CLAIM FOR RELIEF

**Fourth Amendment—Excessive Force (42 U.S.C. § 1983)**

(By All Plaintiffs Against Defendants DOE OFFICERS)

41.     PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 40 of this Complaint with the same force and effect as if fully set forth herein.

42.     The Fourth Amendment of the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by police officers.

43.     While acting under color of state law and in the course and scope of their duties as law enforcement officers for BPD, DOE OFFICERS fired lethal rounds at DECEDENT, which struck and ultimately killed him.

44.     At all relevant times, DECEDENT did not pose an immediate threat of death or serious bodily injury to the officers or anyone else around him.

45.     On information and belief, DOE OFFICERS were integral participants in the use of force and failed to give DECEDENT a warning that deadly force would be used prior to shooting. The shooting violated DOE OFFICERS' training and standard police officer training.

46.     Defendants DOE OFFICERS' unjustified shooting and other uses of force against DECEDENT deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

47.     As a result of the foregoing, DECEDENT suffered great physical pain and suffering up to the time of his death, loss of enjoyment of life, loss of life, and lost earning capacity.

48.     The conduct of Defendants DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE OFFICERS.

36.     PLAINTIFFS bring this claim as successors-in-interest to DECEDENT and seek survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life, under this claim.  PLAINTIFFS also seek attorneys' fees and costs under this claim.

## THIRD CLAIM FOR RELIEF

### Fourth Amendment – Denial of Medical Care (42 U.S.C. § 1983)

(By All Plaintiffs against Defendants DOE OFFICERS)

37.     PLAINTIFFS repeat and reallege each and every allegation of paragraphs 1 through 36, inclusive, as if fully set forth herein.

38.     On information and belief, after being shot with a lethal firearm, DECEDENT was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment. Defendants did not timely summon medical care or permit medical personnel to treat DECEDENT. The delay of medical care caused DECEDENT extreme physical and emotional pain and suffering and was a contributing cause of DECEDENT'S death.

39.     The denial of medical care by DOE OFFICERS deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

40.     As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

41.     DOE OFFICERS knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded DECEDENT'S serious medical needs, causing DECEDENT great bodily harm and death.

42.     DECEDENT survived for a period of time after the incident. DECEDENT was transported from the scene of the shooting to the hospital, where he died on the date of the shooting.

43.     DOE OFFICERS' conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages as to DOE OFFICERS.

44.     PLAINTIFFS bring this claim as successors-in-interest to DECEDENT. PLAINTIFFS seek survival damages on this claim, including for DECEDENT'S injuries, pre-death pain and suffering, loss of life, and loss of enjoyment of life. Plaintiffs also seek attorney's fees under this claim.

## **FOURTH CLAIM FOR RELIEF**

**Fourteenth Amendment – Denial of Familial Relationship (42 U.S.C. § 1983)**

(By All PLAINTIFFS against DOE OFFICERS)

45.     PLAINTIFFS repeat and re-allege each and every allegation of paragraphs 1 through 44, inclusive, as if fully set forth herein.

46.     PLAINTIFFS had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a

10

manner as to shock the conscience, including but not limited to unwarranted state interference in PLAINTIFFS' familial relationship with their husband and father, DECEDENT.

47.     By engaging in the foregoing conduct, DOE OFFICERS deprived PLAINTIFFS of their rights to a familial relationship with DECEDENT in such a manner as to shock the conscience, including by using excessive and unreasonable deadly force against him and by denying him medical care, all of which caused injuries that resulted in DECEDENT'S death.

48.     DOE OFFICERS were integral participants in the use of unreasonable force and acted with deliberate indifference to the constitutional rights of DECEDENT and PLAINTIFFS, and with a purpose to harm unrelated to any legitimate law enforcement objective.

49.     As a direct and proximate cause of the acts of DOE OFFICERS, PLAINTIFFS suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

50.     The conduct of DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and PLAINTIFFS and therefore warrants the imposition of exemplary and punitive damages as to DOE OFFICERS.

51.     All Plaintiffs bring this claim individually and seek wrongful death damages under this claim. Plaintiffs also seek attorney's fees under this claim.

/ / /

/ / /

COMPLAINT FOR DAMAGES

## FIFTH CLAIM FOR RELIEF

### Municipal Liability –

### Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)

(By All PLAINTIFFS against CITY and DOES 7-10)

52.     PLAINTIFFS repeat and re-allege each and every allegation of paragraphs 1 through 51, inclusive, as if fully set forth herein.

53.     DOE OFFICERS acted under color of state law and in the course and scope of their employment as law enforcement officers for the CITY.

54.     The acts of DOE OFFICERS deprived DECEDENT and PLAINTIFFS of their particular rights under the United States Constitution.

55.     DEFENDANT OFFICERS acted pursuant to an expressly adopted official policy or longstanding practice or custom of the CITY, and DOES 7-10, inclusive.

56.     On information and belief, DOE OFFICERS were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with deprivation of DECEDENT'S rights.

57.     When DOE OFFICERS shot and fatally wounded DECEDENT, they acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant CITY.

58.     DOE OFFICERS together with other CITY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)     Using excessive and unreasonable force, including deadly force on persons who do not pose a risk of imminent death or serious bodily injury to others.

(b)     Failing to use and exhaust reasonable alternatives to the use of deadly force.

(c)     Failing to give adequate commands and time to comply

with those commands.

(d)     Failing to give adequate verbal warning that the use of deadly force will be used and time to heed such a warning.

(e)     Providing inadequate training regarding the use of force, including deadly force, use of force, and use of reasonable alternatives to the use of deadly force.

(f)     The handling of situations involving persons suffering from a mental crisis in accordance with their constitutional rights.

(g)     Providing inadequate training and policies, including sustainment training, enforcement of the training when it does exist, and re-training, regarding the use of force, the use of deadly force, handling situations involving persons suffering from mental crisis, and de-escalation.

(h)     Employing and retaining as law enforcement officers, individuals such as DOE OFFICERS at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force.

(i)     Inadequately supervising, training, controlling, assigning, and disciplining CITY officers, and other personnel, including DOE OFFICERS who CITY knew or in the exercise of reasonable care should have known, had the aforementioned propensities or character traits.

(j)     Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by officers of the CITY.

(k)     Ratifying unconstitutional conduct and failing to adequately discipline CITY officers for the above-mentioned categories of misconduct, including inadequate discipline and "slaps

on the wrist," discipline that is so slight as to be out of proportion with the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct.

(l)     Announcing that unjustified shootings are "within policy" even when they are later determined in court to be unconstitutional and refusing to discipline, terminate and retrain officers involved in unconstitutional conduct.

(m)     Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which officers do not report other officers' errors, misconduct, or crimes.  Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officer's wrongdoing.

(n)     Maintaining a policy of inaction and an attitude of indifference towards police shootings, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings.

(o)     Upon information and belief, CITY has an unofficial policy, practice and/or custom of finding almost all—if not all—of its officer involved shootings to be within policy, of not disciplining its officers involved in shootings, or not retraining or firing officers involved in shootings, and of not recommending criminal charges against their officers involved in excessive and unreasonable officer-involved shootings.  As a result, officers involved in excessive uses of deadly force are allowed back to patrol the streets even though CITY knew, or should have known, that these officers have a propensity for using excessive deadly force against the citizens that the officers are

supposed to protect and serve, especially against minorities and those in a mentally crisis.

(p)     Upon information and belief, as a result of CITY policy, custom and/or practices, officers know that if they use deadly excessive force against someone, they will not be disciplined and their use of force will be found within policy, which results in a significant number of CITY officers being involved in numerous shootings.  This policy, custom and/or practice was established by supervising and managerial employees of CITY, specifically, those employees tasked with determining whether officer-involved shootings fall within policy, those employees responsible for disciplining, retraining, and firing employees who use excessive force, and for those employees responsible for making recommendations of criminal charges being filed against officers who use excessive deadly force.

(q)     Upon information and belief, this policy, custom and/or practice long lasting and persistent, and existed well before DOE OFFICERS killed DECEDENT.  This policy, custom and/or practice was established so that CITY officers do not bear the responsibility for the people that they use excessive deadly force against.  This policy, custom and/or practice exists so that the public does not have such a negative perception of CITY and its law enforcement departments and so that CITY can avoid the repercussions associated with its officers' use of excessive deadly force against citizens, including negative publicity, avoiding criminal prosecution and avoiding civil liability.  A significant reason that this policy, custom and/or practice was established was to avoid CITY being held liable, under a theory of vicarious liability, for the uses of excessive and unreasonable deadly force by its employees.  In other words, there is a large financial

15

incentive for CITY to erroneously determine that most, if not all, of its officers' uses of deadly force are within policy.  If CITY, through its policymakers and supervisors, would admit that their officers were at fault for using excessive and unreasonable deadly force, then CITY is well aware of how much they would have to pay for any associated litigation.

59.     By reason of the aforementioned acts and omissions, PLAINTIFFS have suffered loss of love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT, and DECEDENT endured substantial pain and suffering, loss of enjoyment of life, and death.

60.     CITY and DOES 7-10, inclusive, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged herein. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT and other individuals similarly situated.

61.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, CITY and DOES 7-10, inclusive, acted with intentional, reckless, and callous disregard for DECEDENT'S Constitutional rights.  Furthermore, the policies, practices, and customs implemented, maintained, and tolerated by DEFENDANTS CITY and DOES 7-10, inclusive, were affirmatively linked to and were a significantly influential force behind DECEDENT'S injuries.

62.     The following are a few examples of DEFENDANT CITY'S unconstitutional customs, practices and policies, and continued misconduct:

(a)   In *B.P., et al. v. City of Barstow*, *et al*., case no. 5:19-cv-01243-JGB-SP, the City of Barstow reached a $3.25 million settlement with the family of an unarmed man who died after BPD officers applied maximum restraints and placed him, prone, in the back of a police sedan for over 17 minutes.

(b)   In *Alba*, *et al. v. City of Barstow, et al.*, case no. 5:18-cv-02087-JGB (SHK), the City of Barstow agreed to pay $1.175 million to settle a lawsuit involving BPD officers who shot a man in front of his fiancée and minofr children. After minor plaintiffs witnessed their father get shot, BPD officers held the fiancée and minor children at gunpoint for a period of time.

(c)   In *Sprowl v. City of Barstow, et al.,* case no. 5:18-cv-01720-JGB (KKx), the City of Barstow paid $300,000 to settle a lawsuit after a BPD detective shot and killed a man.

(d)   In *Powell, et al. v. City of Barstow, et al.,* case no. 5:16-cv-01472-JGB (KKx), the City of Barstow reached a $2 million settlement with the family of an unarmed man who was tased, beaten, and shot by BPD officers.

63.   Accordingly, DEFENDANTS CITY and DOES 7-10, inclusive, each are liable for compensatory damages under 42 U.S.C. § 1983.

64.   PLAINTIFFS bring this claim individually and as successors-in-interest to DECEDENT, and seek wrongful death damages and survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life.  Plaintiffs also seek attorneys' fees and costs under this claim.

1

## **SIXTH CLAIM FOR RELIEF**

2

### **Municipal Liability for Failure to Train (42 U.S.C. §1983)**

3

(By All PLAINTIFFS against Defendants CITY and DOES 7-10, inclusive)

4        65.    PLAINTIFFS repeat and re-allege each and every allegation in

5    paragraphs 1 through 64 of this Complaint with the same force and effect as

6    if fully set forth herein.

7        66.    DOE OFFICERS acted under color of law at all relevant times,

8    including the time leading up to the shooting.

9        67.    When DOE OFFICERS approached DECEDENT, detained him,

10   escalated the situation, and unjustifiably shot DECEDENT, DOE

11   OFFICERS'S actions directly and substantially contributed to

12   DECEDENT'S death.

13       68.    On information and belief, DOE OFFICERS were not

14   disciplined, reprimanded, retrained, suspended, or otherwise penalized in

15   connection with DECEDENT'S death.

16       69.    The training policies of Defendant CITY were not adequate to

17   train its officers to handle the usual and recurring situation with which they

18   must deal, including but not limited to, with regard to the use of physical

19   force, less than lethal force, and lethal force; the use of reasonable

20   alternatives to the use of deadly force; proper communication, proper

21   warning; utilizing time, space, distance, cover and concealment; pre-shooting

22   tactics, techniques, and procedures; de-escalation; not waiting for sufficient

23   assets, equipment and personnel, including mental health crisis teams to

24   arrive before engaging in situations; controlling officer emotions and fears

25   including inadequate "warrior training" that imbues officers with irrational

26   fears about every situation and encourages excessive and unreasonable force

27   and overreacting to a situation; inappropriate "shoot/don't shoot" scenarios

28   in training that promote the use of unreasonable force; continually assessing

18

a situation to justify every shot fired; and providing medical care to person officers have injured.

70.   DEFENDANTS CITY and DOES 7-10 have numerous officer-involved shootings annually.  DEFENDANTS CITY and DOES 7-10, inclusive, were aware that there was a reoccurring problem with their officers shooting individuals, instead of employing proper de-escalation techniques.  In other words, DEFENDANTS CITY and DOES 7-10, inclusive, were aware that there was a problem involving numerous officer-involved shootings which could have been reasonably avoided had the officers employed well-known and accepted law enforcement tactics and techniques to avoid using unnecessarily and excessive deadly force against these individuals by CITY employees.

71.   Defendants CITY and DOES 7-10, inclusive, were deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

72.   The failure of Defendant CITY to provide adequate training caused the deprivation of PLAINTIFFS' rights by DOE OFFICERS; that is, the Defendants' failure to train is so closely related to the deprivation of the PLAINTIFFS' rights as to be the moving force that caused the ultimate injury.

73.   The following are only a few examples of cases where the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that Defendant CITY failed to adequately train its officers, more specifically the failure to train with regard to the use of force:

a.   In B.P., et al. v. City of Barstow, et al., case no. 5:19-cv-01243-JGB-SP, the City of Barstow reached a $3.25 million settlement

19

with the family of an unarmed man who died after BPD officers applied maximum restraints and placed him, prone, in the back of a police sedan for over 17 minutes.

b. In Alba, et al. v. City of Barstow, et al., case no. 5:18-cv-02087-JGB (SHK), the City of Barstow agreed to pay $1.175 million to settle a lawsuit involving BPD officers who shot a man in front of his fiancée and minor children. After minor plaintiffs witnessed their father get shot, BPD officers held the fiancée and minor children at gunpoint for a period of time.

c. In Sprowl v. City of Barstow, et al., case no. 5:18-cv-01720-JGB (KKx), the City of Barstow paid $300,000 to settle a lawsuit after a BPD detective shot and killed a man.

d. In Powell, et al. v. City of Barstow, et al., case no. 5:16-cv-01472-JGB (KKx), the City of Barstow reached a $2 million settlement with the family of an unarmed man who was tased, beaten, and shot by BPD officers.

74.   By reason of the aforementioned acts and omissions, PLAINTIFFS have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT'S pain and suffering, loss of enjoyment of life, and death.

75.   PLAINTIFFS bring this claim as successors-in-interest to Mr. MICHAELIDIS, and seek survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life. PLAINTIFFS also seek attorneys' fees and costs under this claim.

**SEVENTH CLAIM FOR RELIEF**

**Municipal Liability – Ratification (42 U.S.C. § 1983)**

(By All PLAINTIFFS against CITY and DOES 7-10, inclusive)

76.    PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 75 of this Complaint with the same force and effect as if fully set forth herein.

77.    DEFENDANT DOE OFFICERS, inclusive, were acting under color of state law and in the course and scope of their employment as law enforcement officers for the CITY.

78.    When DOE OFFICERS approached DECEDENT, detained him, escalated the situation, and unjustifiably shot DECEDENT, DOE OFFICERS'S actions directly and substantially contributed to DECEDENT'S death. The aforementioned acts of DEFENDANTS DOE OFFICERS deprived DECEDENT of his particular rights under the United States Constitution.

79.    Upon information and belief, a final policymaker, acting under color of law, has a history of ratifying unreasonable uses of force, including deadly force.

80.    Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of DEFENDANT DOE OFFICERS, inclusive ratified the acts and bases for DEFENDANT DOE OFFICERS' acts.  Upon information and belief, the final policymaker knew of and specifically approved of DEFENDANT DOE OFFICERS' acts.

81.    On information and belief, CITY final policymakers, including DOES 7-10, inclusive, knew that DECEDENT was not an immediate threat of death or serious bodily injury to any person at the time of the DEFENDANTS DOE OFFICERS' use of deadly force.

21

COMPLAINT FOR DAMAGES

82.     On information and belief, the official policies with respect to the incident are that officers are not to use deadly force against an individual unless the individual poses an immediate risk of death or serious bodily injury to the officers or others, or if the individual has inflicted death or serious bodily injury against someone or threatened to do so, the officers may use deadly force to prevent the individual's escape.  The officers' actions deviated from these official policies because DECEDENT did not pose an immediate threat of death or serious bodily injury to the involved officers or anyone.

83.     On information and belief, the CITY approved of the officers' actions after a hearing presented by the officers' legal counsel to DOES 7-10, inclusive, after which DOES 7-10, inclusive, found the officers' actions to be within the official policies of the CITY.  On information and belief, the basis for such approval was based on the officers' self-serving statements that they feared they would be killed or seriously injured, despite evidence to the contrary, including evidence that the involved officers were never physically injured.

84.     Upon information and belief, a final policymaker has determined (or will determine) that the acts of DEFENDANTS DOE OFFICERS were "within policy."

85.     As a direct and proximate result of the aforementioned acts and omissions, DECEDENT suffered past and future pain and suffering, loss of enjoyment of life, and loss of life.

86.     Accordingly, DEFENDANT CITY and DOES 7-10, inclusive, are liable to PLAINTIFFS as successors in interest to DECEDENT for compensatory damages under 42 U.S.C. § 1983.

87.     PLAINTIFFS bring this claim as the successors in interest to DECEDENT and seek survival damages, including but not limited to pre-

death pain and suffering, loss of life, and loss of enjoyment of life.
PLAINTIFFS also seek wrongful death damages and attorneys' fees and
costs under this claim.

### EIGHTH CLAIM FOR RELIEF

**False Arrest/False Imprisonment**

**(Cal. Govt. Code § 820 and California Common Law)**

(By All PLAINTIFFS against All DEFENDANTS)

88. Plaintiffs repeat and re-allege each and every allegation in
paragraphs 1 through 87 of this Complaint with the same force and effect as
if fully set forth herein.

89. Defendants DOE OFFICERS, while working a officers for the
BPD and acting within the course and scope of their duties, intentionally
deprived DECEDENT of his freedom of movement by use of force, threats
of force, violence, menace, fraud, deceit, and unreasonable duress.
DEFENDANTS DOE OFFICERS detained DECEDENT without reasonable
suspicion and arrested him without probable cause.

90. DECEDENT did not knowingly or voluntarily consent.

91. DEFENDANTS DOE OFFICERS detained DECEDENT for an
appreciable amount of time by making DECEDENT feel he was not free to
leave.

92. The conduct of DOE OFFICERS was a substantial factor in
causing the harm to DECEDENT.

93. CITY and DOES 7-10 are vicariously liable for the wrongful acts
of DEFENDANTS DOE OFFICERS pursuant to Section 815.2(a) of the
California Government Code, which provides that a public entity is liable for
the injuries caused by its employees within the cope of the employment if the
employee's act would subject him or her to liability, under California law,
and under the doctrine of *respondeat superior*.

94.     The conduct of DOE OFFICERS was malicious, wanton, oppressive, and accomplished with a conscious disregard for DECEDENT'S rights, entitling PLAINTIFFS to an award of exemplary and punitive damages.

95.     As a result of their misconduct, DEFENDANTS DOE OFFICERS are liable for DECEDENT'S injuries, either because they were integral participants in the wrongful detention and arrest, and/or because they failed to intervene to prevent these violations.

96.     PLAINTIFFS bring this claim as successors-in-interest to DECEDENT, and seek survival damages.

## NINTH CLAIM FOR RELIEF

### Battery (Cal. Govt. Code § 820 and California Common Law)

(By All PLAINTIFFS against All DEFENDANTS)

97.     PLAINTIFFS repeat and re-allege each and every allegation of paragraphs 1 through 96, inclusive, as if fully set forth herein.

98.     DEFENDANTS DOE OFFICERS, while working as officers for the Barstow Police Department, and acting within the course and scope of their duties, intentionally shot DOE OFFICERS multiple times.  As a result of the actions of DEFENDANTS DOE OFFICERS, DECEDENT  was seriously injured and died.  DEFENDANTS DOE OFFICERS had no legal justification for using force, including deadly force, against DECEDENT, and DEFENDANTS DOE OFFICERS' use of force while carrying out their duties as officers was an unreasonable under the circumstances.

99.     At all relevant times, DECEDENT was not an immediate threat of death or serious bodily injury to anyone, including DEFENDANT DOE OFFICERS, no warning was given that deadly force was going to be used prior to the use of deadly force, and less than lethal alternatives were

24

1    available to DEFENDANT DOE OFFICERS.

2        100.   DEFENDANTS CITY and DOES 7-10 are vicariously liable for

3    the wrongful acts of DEFENDANT DOE OFFICERS pursuant to section

4    815.2 of the California Government Code, which provides that a public

5    entity is liable for injuries caused by its employees within the scope of the

6    employment is the employees' acts would subject them to liability.

7        101.   The conduct of DEFENDANT DOE OFFICERS was malicious,

8    wanton, oppressive, and accomplished with a conscious disregard for the

9    rights of DECEDENT, entitling PLAINTIFFS to an award of exemplary and

10   punitive damages.

11       102.   PLAINTIFFS seek survival, wrongful death and punitive

12   damages under this claim.

13

14                       **TENTH CLAIM FOR RELIEF**

15       **Negligence (Cal. Govt. Code § 820 and California Common Law)**

16             (By All PLAINTIFFS against All DEFENDANTS)

17       103.   PLAINTIFFS repeat and re-allege each and every allegation of

18   paragraphs 1 through 102, inclusive, as if fully set forth herein.

19       104.   Peace officers, including DEFENDANTS DOE OFFICERS, have

20   a duty to use reasonable care to prevent harm and injury to others.  This duty

21   includes using appropriate tactics, giving appropriate commands, giving

22   appropriate warnings, use of de-escalation techniques, not using any force

23   unless necessary, using the least amount of force necessary, only using

24   deadly force as a last resort, and providing timely medical care for a person

25   they intentionally harmed.  These duties also include the DEFENDANTS

26   DOE OFFICERS' responsibility to follow their training and policies,

27   responsibility to ensure they are properly trained and equipped to perform

28   their duties in accordance with the department policies, and properly

1 | investigate and report on their use of force incidents.

2 |     105. DEFENDANTS DOE OFFICERS breached their duty of care.

3 | Upon information and belief, the actions and inactions of DEFENDANTS

4 | DOE OFFICERS were negligent and reckless, including but not limited to:

5 |         (a)   the failure to properly and adequately assess the need to

6 | use force against DECEDENT;

7 |         (b)   the negligent tactics and handling of the situation with

8 | DECEDENT, including pre-shooting negligence and failure to utilize

9 | de-escalation techniques;

10 |         (c)   the failure to intervene on other officers' use of excessive

11 | and unreasonable force.

12 |     106. As a direct and proximate result of DEFENDANTS DOE

13 | OFFICERS' conduct as alleged above, and other undiscovered negligent

14 | conduct, DECEDENT was caused to suffer severe past and future mental and

15 | physical pain and suffering, loss of enjoyment of life, and loss of life.

16 |     107. At all relevant times, DECEDENT was not an immediate threat

17 | of death or serious bodily injury to anyone, no warning was given that

18 | deadly force was going to be used prior to the use of deadly force, and less

19 | than lethal alternatives were available to DEFENDANTS DOE OFFICERS.

20 |     108. DEFENDANT CITY is vicariously liable for the wrongful acts

21 | of DEFENDANT DOE OFFICERS' pursuant to section 815.2(a) of the

22 | California Government Code, which provides that a public entity is liable for

23 | the injuries caused by its employees within the scope of the employment if

24 | the employees' act would subject him or her to liability.

25 |     109. PLAINTIFFS seek wrongful death damages under this claim.

26 |     110. DEFENDANT DOE OFFICERS negligently caused physical

27 | injury to DECEDENT when they discharged their firearms at DECEDENT,

28 | striking him multiple times. The use of force, including deadly force, by the

DOE OFFICERS was excessive, unreasonable, and DOE OFFICERS were negligent when they discharged their firearms at DECEDENT, including pre-shooting negligent conduct, actions, inactions, and tactics, and their post-shooting negligent conduct, actions and inactions.

111.   PLAINTIFFS bring this claim as successors-in-interest to DECEDENT and seek wrongful death and survival damages under this claim.

### ELEVENTH CLAIM FOR RELIEF

**Violation of Cal. Civ. Code § 52.1 and California Common Law)**

(By PLAINTIFFS against all DEFENDANTS)

112.   PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 111 of this Complaint with the same force and effect as if fully set forth herein.

113.   The Bane Act, the California Constitution and California common law prohibit the use of excessive force by law enforcement. California Civil Code, Section 52.1(b) authorizes a private right of action and permits survival actions for such claims.  "[A] successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1."  *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105-06 (9th Cir. 2014); citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983."); *Bender v. Cnty. of L.A.*, 217 Cal.App.4th 968, 976 (2013) ("an unlawful [seizure]—when accompanied by unnecessary, deliberate and excessive force—is [] within the protection of the Bane Act").

114.   The Bane Act prohibits law enforcement officers from interfering by threat, intimidation, or coercion, or attempts to interfere by

27

threats, intimidation, or coercion, the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or the laws of the State of California.

115.   On information and belief, DEFENDANTS DOE OFFICERS, while working for the CITY and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against DECEDENT, including by using excessive force against him without justification or excuse, by integrally participating and failing to intervene in the above violence, and by denying him necessary medical care.

116.   When Defendants unnecessarily shot DECEDENT with lethal rounds, they interfered with his right to be free from excessive force.

117.   Defendants intentionally interfered with the above civil rights of DECEDENT and PLAINTIFFS by demonstrating a reckless disregard for his right to be free from excessive force.

118.   DECEDENT was caused to suffer severe pain and suffering, loss of enjoyment of life and loss of life.  The conduct of Defendants was a substantial factor in causing the harm, losses, injuries, and damages to the DECEDENT.

119.   DEFENDANTS DOES 7-10 are vicariously liable for the wrongful acts of DEFENDANTS DOE OFFICERS under California law and the doctrine of *repondeat superior*.

120.   CITY is vicariously liable for the wrongful acts of DEFENDANTS DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

121.   The conduct of the individual DEFENDANT DOE OFFICERS

1  was malicious, wanton, oppressive, and accomplished with a conscious

2  disregard for the rights of PLAINTIFFS and DECEDENT in that

3  PLAINTIFFS' and DECEDENT'S constitutional rights were intentionally

4  deprived and violated, and/or there was reckless disregard for constitutional

5  rights of PLAINTIFFS and DECEDENT.  As such, the aforementioned

6  conduct entitles PLAINTIFFS and DECEDENT to an award of exemplary

7  and punitive damages.

8       122.   PLAINTIFFS also seek survival damages, costs and attorneys'

9  fees under this claim.

10  / / /

11  / / /

12  / / /

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs DENISE MITCHELL and K.M. request entry of judgment in their favor against Defendants CITY OF BARSTOW and DOES 1-10, inclusive, as follows:

A.    For compensatory damages in whatever other amount may be proven at trial, including survival damages, which include pre-death physical and mental pain and suffering, loss of life, and loss of enjoyment of life, as well as wrongful death damages under federal and state law;

B.    For funeral and burial expenses, and loss of financial support;

C.    For punitive damages against the individual defendants in an amount to be proven at trial;

D.    For statutory damages;

E.    For interest;

F.    For reasonable attorneys' fees, including litigation expenses;

G.    For costs of suit; and

H.    For such further other relief as the Court may deem just, proper, and appropriate.

DATED:  June 15, 2022                    LAW OFFICES OF DALE K. GALIPO


By:  _____/s/ Dale K. Galipo_____
                Dale K. Galipo
                Attorney for Plaintiffs

COMPLAINT FOR DAMAGES

1

## **DEMAND FOR JURY TRIAL**

2      PLAINTIFFS hereby submit this demand that this action be tried in front of

3  a jury.

4

5   DATED:  June 15, 2022                LAW OFFICES OF DALE K. GALIPO

6

7                                    By:  _____
                                              */s/ Dale K. Galipo*

8                                         Dale K. Galipo
                                          Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES